## STATE v. MASLICH.

No. 3692.     Decided November 12, 1921.     (202 Pac. 6.)

1. HOMICIDE—EVIDENCE HELD SUFFICIENT TO SUSTAIN CONVICTION OF MURDER. Evidence *held* sufficient to sustain conviction of murder in the first degree.

2. CRIMINAL LAW—TESTIMONY AT PRELIMINARY HEARING NOT INADMISSIBLE BECAUSE TRANSCRIPT CONTAINED NO TITLE PAGE AT TIME OF FILING AND WAS CERTIFIED AFTER FILING. Testimony taken

at preliminary hearing was not rendered inadmissible because the transcript contained no title page at the time it was filed, and because it was certified to after being filed, since the lack of title page can be cured by amendment, as was done, and the adding of the stenographer's certificate was merely a formal amendment, not preventing the accused from having a fair and impartial trial.[1]

3. CRIMINAL LAW—TESTIMONY TAKEN AT PRELIMINARY HEARING IS NOT RENDERED INADMISSIBLE BECAUSE ORIGINAL NOTES OF REPORTER WERE NOT FILED. Where a transcript was conceded to be the transcript of testimony taken at the preliminary hearing, and where counsel for the accused admitted and stipulated that the transcript was correct and authentic, it is not rendered inadmissible because the original notes of the reporter were not filed with the clerk of the district court, as required by statute.[2]

Appeal from District Court, Third District, Salt Lake County; *H. M. Stephens*, Judge.

Steve Maslich was convicted of murder in the first degree, and he appeals.

AFFIRMED.

*Thomas Ramage, James M. Carlson* and *Rawlings & Wallace,* all of Salt Lake City, for appellant.

*Harvey H. Cluff,* Atty. Gen., and *W. Hal. Farr,* Asst. Atty. Gen., for the State.

WEBER, J.

Steve Maslich was charged jointly with Nick Oblizalo, by information filed by the district attorney, with the crime of murder in the first degree. Maslich was accorded a separate trial; was convicted of the crime charged and sentenced to death. From that judgment he appeals. His counsel argue

---

[1] *State v. Vance,* 38 Utah, 27, 110 Pac. 434.
[2] *State v. Vance,* 38 Utah, 27, 110 Pac. 434.

that the evidence adduced is insufficient to sustain the verdict.

On Sunday afternoon, August 3, 1919, Marko Laus was found dead in a ravine near a highway leading to Parley's canyon in Salt Lake county. His body had been mutilated, cut, and hacked. His nose had been broken by a blow. His throat had been cut, his windpipe being almost severed. He had been stabbed just below where his throat had been cut. Three knife wounds had been inflicted on the breast of the murdered man near his heart. He was stabbed in the side, in the back, and in the head. His hands were cut. His clothing had been torn from his body. His vest had been ripped open and the buttons ripped from it, and his trousers ripped open. His shirt and underclothing were torn so that the entire upper part of his body was exposed. No money was found on the body. Nothing was left in his pockets except a small knife. At about 2:30 on the afternoon of that day two men and a woman in an automobile saw three men struggling at the edge of the ravine. Two of the men were holding the third, who was struck in the face by one of the others, and then the three men vanished from sight into the ravine in which the murdered man was thereafter found near the scene of the struggle. One of the men in the automobile stated that the two men were beating up some one, and started over to interfere, when the woman made an objection, and the suggested interference was not consummated. The two men in the automobile could not identify either of the two assailants, but they described their clothing and the hat of one of them. This description corresponded with that given by other witnesses of the clothing worn by Maslich and Oblizalo that day. On the day of the murder Oblizalo and Laus were seen together in Salt Lake City till nearly 2 p. m. Several days before the homicide Marko Laus came to Salt Lake City from Colorado with from $1,000 to $1,200 in gold upon his person, and it is fairly inferable from the evidence that he had this money in his possession when he was murdered. Neither the appellant nor his codefendant had any money prior to the murder. Both were what the witnesses call

"broke." They roomed together and were constant companions. Oblizalo, a few days before the homicide, said that a man who had plenty of gold would not "fall" for an attempted "bunko" game. The appellant asked one of the witnesses if he could not find a way of getting the money away from Laus. Both Oblizalo and appellant knew of Laus having this money, and in a conversation participated in by both of them it was said they proposed to take it away from him. Immediately after the murder Maslich, who had eked out a precarious existence gambling at various gambling houses in Salt Lake City, was in the possession of gold coin, and paid one of his countrymen $160 in $20 gold pieces. When asked where he obtained the money he replied that it was no one's business, and that he was going to Butte, Mont. He further said that they had tied Laus to a tree, "and he is no more." Maslich left for Butte that night, where he was later arrested. He had arrived at Butte with ample funds. Oblizalo also was wholly without money just before the murder and had considerable gold money immediately thereafter.

These are only a few of the many incriminatory circumstances proved by the state. The record presents a gruesome story of sordidity and brutality. The evidence establishes that appellant and his codefendant entered into a conspiracy to rob Marko Laus, and that in perpetrating that robbery they brutally murdered him. The appellant's guilt is proved by the evidence beyond all reasonable doubt. It is difficult to conceive how the jury could have arrived at any other verdict than that of guilty of murder in the first degree.

Appellant assigns as error the admission of testimony taken at the preliminary examination because the transcript contained no title page at the date it was filed, because it was certified to after being filed, and because the original notes of the reporter, written at the preliminary hearing, were never filed with the clerk of the district court as required by statute. If it be assumed that a title page is a material part of a transcript, the difficulty can be cured by amendment, as was done in this case. *State v. Vance*, 38 Utah, 27, 110 Pac.

434. Adding the stenographer's certificate was also merely a formal amendment which could in no possible manner prevent the accused from having a fair and impartial trial. Had there been any question about the correctness of the transcript of the shorthand notes, their absence might have been prejudicial to the defendant. But no objection was made to the transcript on the ground that it was not a correct or authentic transcript of the testimony. It was conceded to be a transcript of the testimony produced at the preliminary hearing of these defendants on the charge on which they were held to answer. The witnesses whose transcribed testimony was introduced were absent from the state. The record also shows that counsel for appellant admitted and stipulated the transcript to be correct and authentic. The transcript being concededly true and correct, appellant could not possibly sustain prejudice or injury from the absence of the stenographic notes. As stated in *State* v. *Vance, supra:*

"The filing of the original notes can be required but for one purpose, namely, to enable counsel for the state and the accused to determine whether the longhand transcript of the testimony and the proceedings correspond with the original notes. Beyond this, they can perform no function whatever."

The assignment of error relating to admission of testimony from the transcript is therefore not well founded.

Appellant was accorded a fair trial. An impartial jury found him guilty. No reason exists for interfering with the verdict. The judgment is therefore affirmed. The cause is remanded to the district court of Salt Lake county with directions to fix a date for execution.

CORFMAN, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.